## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

| |
|---|
| Dominic Tringale    ProSe |
| Plaintiff |
| v. |
| The Commonwealth of Massachusetts (Essex County Probate and Family Court and the Department of Revenue) |
| and |
| The United States (Social Security Administration) |
| Defendants |



## COMPLAINT AND JURY DEMAND

### PARTIES

1. The Plaintiff, Dominic Tringale, (hereafter referred to as "Plaintiff"), is a former resident of 142 Allen Avenue, Lynn, Essex county, Massachusetts, now living at 3 Spring Street, Windham, NH. Mailing address: P. O. Box 774, Windham, NH 03087.

2. The Defendant, The Commonwealth of Massachusetts, 24 Beacon Street, Boston, MA is the enterprise, overseer of The Essex County Probate and Family Court, then located at 36 Federal Street, Salem, Essex County, Massachusetts, (hereafter referred to as the "Probate Court") and The Department of Revenue, 1 Ashburton Place, Boston, MA (hereafter referred to as the "DOR").

3. The Defendant, The United States, is the overseer of the Social Security Administration, Room 1900,JFK Federal Building, Boston, MA 02203who administers Title IV-D of the Social Security Act.

1

## JURIDICTION

4. This Court has jurisdiction over the claims set forth herein, pursuant to 28 U.S.C. Sec. 1331 and 1332 and otherwise. There are federal questions of Constitutionality and law and the amount is over $75,000.00. The Plaintiff filed a similar suit in Massachusetts Superior Court many years ago but the Massachusetts Attorney Generals office felt that the Probate Court and its judges had immunity to abuse the laws, the Massachusetts Constitution and U.S. Constitution at whim.

## ALLEGATIONS

5. The Plaintiff claims that, in his divorce, he was misled by the Probation Officer (David Quenen) on April 18, 2000, in his initial temporary orders meeting. The Plaintiff, a self-employed electrician, had not received his tax returns back from the accountant yet and was told by the Probation Officer to estimate his income, write on the financial statement that it was an estimate and he could change it later when he got his tax returns back. The Plaintiff received his tax returns that night and discovered that he had overestimated by one hundred percent. (Estimated $41,000.00 when in actuality it was $20,000.00) The plaintiff filed for modification as soon as he could, and when he took it to Judge Edward J Rockett, he denied the Plaintiff the modification and also denied further modification in the future. Because of this order the Plaintiff was always behind and could not get caught up. The Plaintiff claims the Probate Court forced him into involuntary servitude. The Plaintiff claims that if the child support was figured to the real income, and not imagined, he would have not been in arrears except when having to pay costly opposing lawyers fees. Violations: Paragraph 19 c, e, g, I, j, k, m.

6. The Plaintiff claims because of the exorbitant child support, due to the inaccuracy of the income estimation, he had been unable to pay the child support, his own bills and his taxes. He was also unable to run his business because the Massachusetts Department of Revenue had levied his bank accounts, (per orders of Title IV-D), was continually harassed and summoned to answer motions and contempts filed by the Plaintiff's wife's lawyer, Ms. Lauren Kaufman. He was incarcerated numerous times for arrears and his wife's legal fees, and denied the love and affection of his daughter (Exhibit A). The Plaintiff had been treated like a criminal by the Probate Court since the beginning of the proceedings and had suffered financial, physical and emotional trauma from the stress of dealing with the Probate Court. Violations: Par. 19 c, d, e, g, h, I, j, k, l, m.

7. The Plaintiff claims because the Probate Court ordered the Plaintiff to pay child support on a higher estimated amount of income and not on the actual income as declared on his income tax, Plaintiff was placed in debt servitude. Based on the inaccuracy of the income estimation, Plaintiff told the judge the child support was too high and Judge Rockett said, "Get a second or third job!"

2

Judge Rockett also compelled the Plaintiff to do job searches and was threatened with incarceration and fines if he didn't comply. At some point after the threats, he was fined and incarcerated for not complying. The XIII Amendment of the Constitution makes it "unlawful to hold a person in "debt servitude," or peonage, which is closely related to involuntary servitude. Section 1581 prohibits using force, the threat of force, or the threat of legal coercion to compel a person to work against his/her will. In addition, the victim's involuntary servitude must be tied to the payment of a debt." Violations: Par. 19 c, I, j, k

8. The Plaintiff claims because the Probate Court ordered the Plaintiff to pay child support on a higher estimated amount of income and not on his actual income as declared on his income tax, therefore, the Probate Court incarcerated him for the arrears. The Probate Court violated the VIII Amendment "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Requiring the Plaintiff to purge himself out of jail by paying inflated imagined child support and legal fees was essentially "excessive bail and fines". Violations: Par. 19 b, e, m.

9. On March 20th of 2001, the Plaintiff called the wife's lawyer and told her that he was denied visitation of his child by the wife. The lawyer (Ms. Kaufman) informed the Plaintiff that a 209A restraining order was issued against him and he should have received notice of the hearing which was supposed to be in a few days on March 22nd of 2001. The Plaintiff showed up at the Probate Court on March 20th of 2001 to see the order and find out that someone had entered the wrong address (145 Allen Ave not the correct address of 142 Allen Ave, Lynn, MA) on the 209A restraining order. The Plaintiff was informed later that this was an old trick by the lawyers in the Probate Court to cause the accused to default on the restraining orders, causing them to lose custody of their children. Plaintiff notified the Probate Court of the wrong address on the order. They assured the Plaintiff they would change it. One year later the Plaintiff saw the Lynn police looking for 145 Allen Avenue when his address was 142 Allen Avenue. The Plaintiff had a sense that something was amiss and went to the Probate Court and found out that the restraining order was being renewed and it still had the wrong address on it. The Probate Court was obstructing justice with this action. The Plaintiff will show a pattern of obstruction of justice by the Probate Court. Violations: Par. 19 e, g, k, l, m,

10. The Plaintiff claims that on March 22nd, 2001, Judge Rockett was blatantly bias and prejudicial in his decisions against the plaintiff in favor of his ex-wife's 209A restraining order (Exhibit E). The Plaintiff told the judge that he had never done anything to provoke the wife or ever hit her. The judge asked the wife if the Plaintiff had ever hit her and she responded, "I don't remember." Judge Rockett then asked her, "How can you not remember being hit? Did he ever hit you?" She

3

lowered her head and said, "No." The judge then heard the Plaintiff's restraining order statement against his wife charging her with mental, verbal, physical and sexual cruelty and abuse (~~~~~~). Judge Rockett handed her the statement and asked her to comment and she did not deny any of the charges only saying, "Well I was afraid to be alone." The Plaintiff then told the judge that the wife wanted to take the child away from the Plaintiff in the same manner as the wife's mother had done to her. The judge asked if this was "generational" and the Plaintiff agreed. The judge then upheld the wife's request for a restraining order and denied the Plaintiffs request for a restraining order against the wife. The Plaintiff only saw his child a few times that year because of the mother's interference with visitation, subsequently the Plaintiff did not see his child for another thirteen years because of the Commonwealth's interference. The Plaintiff claims that Judge Rockett was afraid to deny the wife's request for the restraining order because another judge had recently denied a woman's request and she was murdered by her abuser, causing that judge much trouble. On the afternoon of March 23rd, 2001 the Plaintiff filed a more detailed description of issues over time with his wife. The motion was heard on March 27th, 2001. Again, Judge Rockett denied his request for a 209A restraining order against the wife, but entered an order to restrain the Plaintiff from filing any more requests for relief and as a result, the Plaintiff claims XIV amendment violations. Violation: Par. 19 d, e, h, l, m.

11. On May 8th 2001, the Plaintiff had been summoned to the Probate Court for another arrears contempt motion. The Plaintiff, the estranged wife and her lawyer, Ms Kaufman, arrived at the court at eight-thirty in the morning. They waited several hours before seeing the probation officer then went upstairs and waited several more hours to see a judge. Judge Joseph Hart finally heard the case at five o'clock. The case file was misplaced but the Judge still heard the case and ruled against the Plaintiff only by the word of Ms. Kaufman. Because of the time waiting for the judge to enter the court, an attorney fee of Seven hundred and fifty dollars was charged by the wife's lawyer. The wife's lawyer complained that the Plaintiff could not afford to pay her bill for the day and asked the judge to incarcerate the Plaintiff to get the money from him. The Plaintiff complained that he couldn't even afford his own lawyer but Judge Hart, unfamiliar with the case and without even having the case file, incarcerated the Plaintiff for arrears, not seeking work, and the opposing lawyer's fees, all on the word of the wife's lawyer. The Plaintiff ended up spending several days in the Essex County House of Correction (missing work, losing clients) until he could borrow money from family to get out of jail. Violations: Par. 19 b, c, d, e, j, k, l, m.

12. On August 14th 2001, the Plaintiff filed a lawsuit in Salem Superior Court against the Essex County Probate and Family Court, Judge Edward J Rockett and Judge Joseph Hart for conspiracy and State Constitutional rights violations (Exhibit B). The Plaintiff saw how the operation of the

4

Probate Court was designed to drag out cases and generate the most billable hours for the attorneys and fees for the Probate Court including compensation to the Commonwealth, from the Federal government (Title IV-D) for maximizing child support and incarcerating fathers in arrears of their child support. Judge Rockett was served, on the bench, on August 16th. Within an hour of the service, the Plaintiff's case was moved to Judge John Cronin's courtroom where he committed the Plaintiff to thirty days in jail to collect arrears and opposing lawyer's fees. After a week in jail, the Plaintiff had to borrow money from a client to purge himself out of jail. He then had to pay back the client with credit card advances. On September 17th, 2001 Judge Cronin sent the Plaintiff to jail again for 60 days, for arrears and legal fees. Plaintiff had to borrow money from family to get out of jail again. The Plaintiff was informed by GAL Dr. Joan Kitsis, that if he dropped the lawsuit, the divorce would be expedited. (Exhibit G) The Plaintiff filed a Notice of Voluntary Dismissal, without prejudice on October 25, 2001 and was not incarcerated again even though he still owed arrears (Exhibit C). Violations: Par. 19 c, d, e, h, j, k, l, m.

13. Because the Probate Court was so bias and abusive, the Plaintiff asked, many times, for a jury trial. He asked Judge John Cronin for a jury trial one time and he replied, "That's NOT how we do things around here." The Plaintiff motioned the Probate Court for a jury divorce trial and was denied. The Plaintiff claims that the Commonwealth of Massachusetts Department of Revenue (DOR) has contractual and legal obligations with the United States government, (Title IV-D of the Social Security Act) (Exhibit D), for the institution of child support, the collection enforcement and punishment of non-payment of such. The Probate Court issues the orders and doles out the punishment for non-compliance. Title IV-D also monetarily supports the Commonwealth with tens of millions of dollars annually in grants calculated as ratios of child support generated by the Probate Court and incentives for collections of arrears by the incarceration of fathers that can not pay their child support. The Plaintiff claims that the Probate Court and the DOR are under the authority of the United States and are subject to its Constitutional (VII Amendment) requirements Violations: Par. 19 a, c, j, k, m

14. At one point in time, the Plaintiff was in arrears again and had gotten paid for a job and deposited the check into his bank account. He immediately sent a check to the Massachusetts Department of Revenue (DOR) for $1,400.00 +/-. A few days later he got a letter in the mail from the DOR stating that he had sent them a bad check and they were charging him with check fraud. He went to the bank to find out what happened to the money and they told him the DOR had cleaned out his bank account. The Plaintiff had to drive to the DOR office and rectify the problem. The Plaintiff explained that they (DOR) were the reason the check bounced. The agent didn't care and wanted him charged. After an hour of arguing, the Plaintiff finally convinced the agent that they

5

were the problem. The DOR also cleaned out another bank account of the Plaintiff in New Hampshire. The arrears were an imagined debt so these bank cleanouts were bank robbery. The Plaintiff will supply many other fathers that have also been victimized by this agency. The United States is also responsible since the DOR was following the orders of Title IV-D mandates. Violations: Par. 19 c, j, k, m.

15. The divorce trial started on March 20th, 2002. The Plaintiff had motioned for a jury trial and was denied. The Plaintiff could not afford an attorney and did his own questioning and read and made a statement on the witness stand. At the end of the trial, March, 26th, Judge Peter C DiGangi wanted the Plaintiff to sign a form that he did not want to sign. The judge said, "Sign that paper or you'll never see your daughter again!" The Plaintiff signed the paper but only saw his daughter one time after that. Violations: Par. 19 e, k, l, m.

16. At the meeting to go over Consolidated Findings of Fact and the final "Judgment", in May of 2002, the wife and her lawyer, Ms. Kaufman, falsely accused the Plaintiff of sexual abuse of his daughter. The Plaintiff had no idea what they were talking about. Judge DiGangi gave the Plaintiff a disparaging look and suspended the Plaintiff's visitation rights with his daughter. The Plaintiff finally had enough of this corrupt, bias court and vowed to stay away. The next time he saw his daughter was thirteen years later in January of 2015. Violations: Par. 19 e, k,

17. From 2003 to the present, the Plaintiff moved out of the Commonwealth to escape this persecution and has not been able to keep a steady job because the Commonwealth of Massachusetts, following the guidelines of the United States government Title IV-D, had taken away the Plaintiffs drivers license and electrician's license, making it virtually impossible to work. The Massachusetts Department of Revenue continued to bill the Plaintiff for the same amount per week even though they took away his source of income. The DOR recently sent the Plaintiff a bill for arrears, fines and interest proving continuing violations doctrine. Violations: 19 c, d, e, j, k, m.

18. The Plaintiff has lost his house, his business, the opportunity to start new businesses, (TimberHeat.com) his driver's license, his electrician's license, years of productive work, property and the most important thing, the time with his loving daughter. He was a great dad and has been heartbroken for the last fifteen years not seeing his daughter. What work he did get, he would think about his daughter and curse the Probate Court, sometimes out loud. He lost work from these outbursts. The Plaintiff is not the only victim of these crimes. His daughter grew up fatherless like the children of police officers killed by scum in the line of duty. She is permanently scarred from this and deserves compensation as well. The Plaintiff's girlfriend who supported him through these past thirteen years didn't deserve to be a victim of this court either. She was a single mother of three who fell in love with the man who was good to her, her children and now her

6

grandchildren, but could never financially support his share in the household. The crimes of this court go far beyond the courtroom. The Plaintiff claims damages under TITLE 18, U.S.C., SECTION 1964   Racketeering, Civil Remedies.

19. The Plaintiff claims the following codes in this suit:
    a. TITLE 18, U.S.C., SECTION 242   Deprivation of Rights Under the Color of Law, VII Amendment of the U. S. Constitution
    b. TITLE 18, U.S.C., SECTION 242   Deprivation of Rights Under the Color of Law, VIII Amendment of the U. S. Constitution
    c. TITLE 18, U.S.C., SECTION 242   Deprivation of Rights Under the Color of Law, XIII Amendment of the U. S. Constitution
    d. TITLE 18, U.S.C., SECTION 242   Deprivation of Rights Under the Color of Law, XIV Amendment of the U. S. Constitution
    e. TITLE 18, U.S.C., SECTION 241   Conspiracy against Rights
    f. TITLE 18, U.S.C., SECTION 1964   Racketeering, Civil Remedies.
    g. TITLE 18, U.S.C., SECTION 1509   Obstruction of Court Orders.
    h. TITLE 18, U.S.C., SECTION 1512   Tampering with Victim
    i. TITLE 18, U.S.C., SECTION 1584   Involuntary Servitude.
    j. TITLE 18, U.S.C., SECTION 1581   Peonage.
    k. TITLE 18, U.S.C., SECTION 1951   Extortion. (2404 Hobbs Act)
    l. TITLE 18, U.S.C., SECTION 1201   Kidnapping.
    m. TITLE 18, U.S.C., SECTION 1962   Racketeering.

20. The Plaintiff admits this is an extreme case of abuse by the Probate and Family Court system of the Commonwealth of Massachusetts, but he will bring forth many other victims of this racket. Unfortunately there are many victims who are no longer with us, who have committed suicide or worse, buckling under the pressure of the abuse. The Plaintiff claims that the Commonwealth of Massachusetts and the United States government are responsible for some of these deaths and this suit will prove all claims.

## RELIEF

WHEREFORE, the Plaintiff demands judgment against the defendants for damages and such other relief as this court deems just.

The Plaintiff demands relief from incarceration by the Commonwealth of Massachusetts,

The Plaintiff demands an immediate return of his driver's license,

The Plaintiff demands the Court immediately retrieve all The Plaintiff's files from the Essex County Probate and Family Court to protect from illegal misuse by the Defendants,

The Plaintiff asks the Court to hold the files and make copies for all parties,

The Plaintiff demands a return of his electrician's license,

The Plaintiff demands a judgment for physical and financial damages of $1,900,000.00 (RICO)

The Plaintiff demands judgment for the Commonwealth of Massachusetts to pay Marcie Warshauer all monies promised her by the Probate Court, (even imagined money plus interest),

The Plaintiff demands judgment to Molly Rose Tringale of $5,000,000.00 for pain, suffering, kidnapping, and alienation of affection,

Demand for judgment to the Plaintiff of $50,000,000.00 for pain, suffering, false imprisonment, kidnapping, deprivation of rights and alienation of affection,

The Plaintiff will demand a Department of Justice investigation into the crimes (RICO) committed against him by the Probate Court.

The Plaintiff will demand a Department of Justice (RICO) investigation into the Probate and Family Court's practices of wrong addresses on 209A restraining orders, exaggerating incomes to generate more child support, abuse of contempt incarcerations, intentional continuances, excessive wait times to see probation officers and judges generating more billable hours for attorneys and other charges. The Probate and Family Court system of Massachusetts is out of control. The Plaintiff will supply many other victims to testify for authorities.

The Plaintiff demands a trial by jury.

April 16, 2015

Dominic Tringale
P. O. Box 774
Windham, NH  03087

603-817-2976